1 | Dan Stormer, Esq. [S.B. # 101967]
HADSELL STORMER & RENICK LLP
2 | 128 N. Fair Oaks Avenue
Pasadena, California 91103
3 | Telephone: (626) 585-9600
Facsimile:  (626) 577-7079
4 | Emails: dstormer@hadsellstormer.com

5 | Lori Rifkin, Esq. [S.B. # 244081]
HADSELL STORMER & RENICK LLP
6 | 4300 Horton Street, #15
Emeryville, CA 94608
7 | Telephone: (626) 585-9600
Facsimile:  (626) 577-7079
8 | Email: lrifkin@hadsellstormer.com

9 | Attorneys for Plaintiffs

10

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13

14 | JUDITH DOMINGUEZ and PATRICIA MARTINEZ,

| Case No.:

15 | Plaintiffs,

| **COMPLAINT FOR DAMAGES:**

16 | v.

| 1. **Violation of Title VII (Discrimination)**

17 | CHERRY CREEK MORTGAGE COMPANY, INCORPORATED; and

| 2. **Violation of Equal Pay Act**
3. **Violation of Affordable Care Act**

18 | UNITEDHEALTH GROUP d/b/a UNITEDHEALTHCARE SERVICES, INCORPORATED,

| 4. **Violation of Title VII (Retaliation)**

19 | Defendants.

| 5. **Violation of Cal. Fair Employment & Housing Act (Retaliation)**

20 |

| 6. **Violation of Cal. Labor Code (Retaliation)**

21 |

| 7. **Wrongful Termination in Violation of Public Policy**

22 |

| 8. **Unauthorized Use of Name or Likeness for Commercial Purpose (Cal. Civ. Code § 3344)**

23

24

25 | | **[DEMAND FOR JURY TRIAL]**

26

27

28

COMPLAINT FOR DAMAGES

**INTRODUCTION**

1.  In December 2016, Defendant Cherry Creek Mortgage Company ("Cherry Creek") informed its employee, Judith Dominguez, that Cherry Creek would no longer provide health insurance benefits to her spouse solely because Ms. Dominguez and her lawful spouse, Patricia Martinez, are both women. Moreover, Cherry Creek told Ms. Dominguez that the company would be retroactively retracting the health benefits they had provided to her wife for the prior year, leaving Ms. Dominguez and Ms. Martinez suddenly looking at more than $40,000 dollars in unexpected health care bills for past treatment.

2.  Defendant's actions left Ms. Martinez, who had a heart attack in late 2015 requiring crucial follow-up health care in 2016 and 2017, without health insurance coverage at a crucial time, endangering her health, and causing severe emotional distress and physical risk to Ms. Dominguez and Ms. Martinez.

3.  By its own admission, Defendant Cherry Creek stripped Ms. Dominguez and her spouse of employee spousal health benefits solely because Ms. Dominguez and Ms. Martinez are both women.

4.  Per its policy of offering spousal health benefits to its employees, Cherry Creek had provided spousal health benefits to Ms. Martinez throughout 2016. However, in December 2016, Defendant Cherry Creek apparently newly found Plaintiffs' marriage intolerable and suddenly claimed their marriage was excluded from its spousal benefits coverage.

5.  In early 2017, Ms. Dominguez, through her counsel, sent a demand letter to Defendant requesting reinstatement of coverage for her spouse, and, following Defendant's refusal, filed a complaint of discrimination with the federal Equal Employment Opportunities Commission.  At the end of June 2017, after Ms. Dominguez was granted a "right to sue" by the EEOC, Defendant Cherry Creek terminated her employment without warning.

6.  Federal law prohibits Defendants' discriminatory and malicious actions

---

COMPLAINT FOR DAMAGES                    -1-

against Ms. Dominguez and Ms. Martinez.  As affirmed by the United States Supreme Court, their legally-sanctioned marriage must be accorded the same respect as any other lawful marriage, and companies choosing to operate in the United States must comply with federal employment antidiscrimination laws.

## JURISDICTION

7.      This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, the Equal Pay Act, 29 U.S.C. § 206(d), and Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, as well as California state law.

8.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over Plaintiff Dominguez's state law wrongful termination and retaliation claims pursuant to 28 U.S.C. § 1367, as these claims arise out of the same case or controversy.

9.      Plaintiffs have fully exhausted administrative remedies before filing suit in this District.  Plaintiff Dominguez filed a complaint with the Equal Employment Opportunities Commission (EEOC), dual filed with the California Department of Fair Employment and Housing (DFEH), regarding Cherry Creek's discrimination against herself and Ms. Martinez, and received a dismissal and EEOC and DFEH "right to sue" notices on May 18, 2017.

10.      Plaintiff Dominguez filed a complaint with the EEOC, dual filed with DFEH, regarding Cherry Creek's retaliatory termination of her employment.  Ms. Dominguez received an DFEH "right to sue" notice on July 26, 2017, and an EEOC "right to sue" notice on August 16, 2017.

## VENUE

11.      Plaintiffs' claims arose in the County of Los Angeles, California. Venue therefore lies in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).

12.      Central District of California General Order No. 16-05 (I.B.1.a(1)(c)) authorizes assignment to the Western Division because all Plaintiffs reside in Los

1 | Angeles County.

2 | **PARTIES**

3 | 13.     Plaintiff JUDITH DOMINGUEZ, age 59, is a resident of Alhambra,

4 | California, in the County of Los Angeles. Ms. Dominguez is a licensed real estate and

5 | mortgage loan officer, and has worked as a mortgage loan officer for twelve years.

6 | Prior to that she was an insurance broker for more than sixteen years. She was

7 | employed as a loan originator by Cherry Creek Mortgage Company from February

8 | 2016 through June 2017, working in the company's Diamond Bar, California branch.

9 | 14.     Plaintiff PATRICIA MARTINEZ, age 55, is a resident of Alhambra,

10 | California, in the County of Los Angeles. Ms. Martinez is a licensed insurance broker

11 | and worked in the insurance industry for approximately ten years. She is also a licensed

12 | real estate agent and has worked in real estate part-time the past seven years. Ms.

13 | Martinez provides daily care for her 92-year-old mother, who has rheumatoid arthritis

14 | and requires physical assistance for daily activities.

15 | 15.     Plaintiffs JUDITH DOMINGUEZ and PATRICIA MARTINEZ have been

16 | a couple for 29 years, and legally married in 2013 in Norwalk, California pursuant to

17 | the laws of California.

18 | 16.     Defendant CHERRY CREEK MORTGAGE COMPANY,

19 | INCORPORATED ("CHERRY CREEK") is a privately-owned for-profit company that

20 | provides mortgage loans. Cherry Creek is headquartered in Colorado and employs

21 | more than 750 employees and operates in 24 states, including operating more than 15

22 | offices in California, where Ms. Dominguez was employed.

23 | 17.     Defendant UNITEDHEALTH GROUP d/b/a UNITEDHEALTHCARE

24 | SERVICES, INCORPORATED ("UNITEDHEALTH") is a company providing health

25 | insurance benefits plans and administration services. UnitedHealth is the Third Party

26 | Administrator for the medical insurance plan that Cherry Creek offered its employees

27 | and their families, including Plaintiffs. UnitedHealth provides and administers health

28 | care plans throughout the United States.

COMPLAINT FOR DAMAGES       -3-

## FACTUAL ALLEGATIONS

18.     Ms. Dominguez and Ms. Martinez have been a couple for 29 years. They met and started dating in 1988.

19.     Although Ms. Dominguez and Ms. Martinez had been a couple for many years, and wanted to be married, they were worried about the legal uncertainties of same-sex marriage. Because of this, they waited to marry until the United States Supreme Court had ruled in *Hollingsworth v. Perry*, 570 U.S. ___ (2013), which resulted in a final ruling that denial of marriage rights to same-sex couples in California was unconstitutional.

20.     Ms. Dominguez and Ms. Martinez lawfully married on December 13, 2013 in Norwalk, California.

21.     Being legally married has been very significant to Ms. Dominguez and Ms. Martinez. After years of weathering discrimination and anxiety about whether their relationship would be legally recognized if one of them fell ill or were in an accident, they felt as if a weight had been lifted from them. The judge who married them said during the ceremony, "you are family now." They felt empowered by the recognition of their relationship by the government, and being able to tell everyone, "this is my wife."

22.     Ms. Dominguez and Ms. Martinez have both endured discrimination based on their sexual orientation. In the male-dominated business world, they have been verbally and physically harassed by men who believed they "just needed to meet the right man." In the early 2000s, a brick was thrown through the window of Ms. Dominguez's insurance office and she was referred to as Judith "Dyke" Dominguez on insurance policies issued and mailed to her clients.

23.     In the 1990s and 2000s, at times when Ms. Martinez was in the hospital, Ms. Dominguez was not allowed to be in the room with her unless she said she was her sister or another relative. Once they were able to legally marry, the couple breathed a sigh of relief that those days were over.

COMPLAINT FOR DAMAGES          -4-

24.     Ms. Dominguez began employment with Cherry Creek as a loan originator on or around January 25, 2016.

25.     Ms. Dominguez had previously been working as a loan originator in the Diamond Bar office of Primary Residential Mortgage, Incorporated.  The branch office's owner announced that the office was going to change lenders and become a part of Cherry Creek.  He invited his employees to work with him for Cherry Creek and Ms. Dominguez did so.

26.     Cherry Creek provides mortgage loan services in at least 24 states throughout the country, and has more than 15 offices in California.

27.     Cherry Creek provides mortgage loan services to same-sex spouses and earns profit from doing so.  In fact, Ms. Dominguez attended a training as part of her employment with Cherry Creek about how to enter same-sex spouses into their computer system.

28.     Cherry Creek offers its employees health care insurance for themselves and their families, including spouses, through a medical plan administered by UnitedHealth Group d/b/a/ UnitedHealthCare Services, Inc., a dental plan administered by Delta Dental of Colorado, and a vision plan administered through EyeMed (collectively, "health insurance plans").

29.     Since Plaintiffs legally married, Ms. Martinez had participated in health insurance plans offered by Ms. Dominguez's employers as an eligible spouse.

30.     In February 2016, Ms. Dominguez submitted enrollment forms for herself and Ms. Martinez to receive health insurance through Cherry Creek as part of her employment benefits. Cherry Creek asked Ms. Dominguez for their marriage certificate, and Ms. Dominguez provided this certificate, which lists both of their names.  The paperwork Ms. Dominguez and Ms. Martinez filled out to enroll in health insurance plans reflected the fact that both of them are female.

31.     Cherry Creek did not indicate any objections to providing health insurance for Ms. Martinez, and, in fact, enrolled Ms. Dominguez and Ms. Martinez as "employee

"+ spouse" in its health insurance plans as of March 1, 2016, including the medical insurance plan administered by UnitedHealth.  *See* Attachment A to Complaint.

32.     Throughout 2016, Plaintiffs paid the required employee contribution for Ms. Martinez's health insurance coverage, with the medical, dental, and vision plan premiums deducted from Ms. Dominguez's twice-monthly paychecks, totaling approximately $10,000.

33.     In November 2016, Ms. Dominguez submitted annual re-enrollment health insurance forms for herself and Ms. Martinez.  On November 21, 2016, Cherry Creek and UnitedHealth approved enrollment of Ms. Dominguez and Ms. Martinez as "employee + spouse." *See* Attachment B to Complaint.

34.     On or around December 28, 2016, Cherry Creek Human Resources Generalist Richard Pulliam, Jr. informed Ms. Dominguez that Cherry Creek would not permit her to re-enroll Ms. Martinez in the health insurance plans offered by the company to employees and their family members.  Cherry Creek also informed Ms. Dominguez that it was retroactively revoking her wife's health insurance coverage from March 2016 onward.  Cherry Creek stated that it was denying Ms. Dominguez's wife health insurance coverage because Cherry Creek covers "spouses who are in a legal union between one man and one woman."  *See* Attachment C to Complaint.

35.     Cherry Creek wasted no time terminating Ms. Martinez's health coverage. When Ms. Martinez went to the pharmacy the following week to pick up her prescription medications, the pharmacy informed her that she had to pay approximately $700 because she was not covered by insurance.

36.     Ms. Martinez had a heart attack in or around April 2015, and a second heart attack in or around August 2015.  She needs regular medical treatment for diabetes and hypothyroidism, and follow-up cardiology care.  In or around October 2016, Ms. Martinez had to have her gall bladder removed and was hospitalized for that operation.

37.     Since Cherry Creek notified Ms. Dominguez and Ms. Martinez that it

1   would not provide health insurance to Ms. Martinez and would be retroactively

2   withdrawing health insurance coverage for 2016 from Ms. Martinez, the couple has

3   experienced severe distress.

4        38.     Ms. Martinez obtained health insurance coverage in January 2017 through

5   Covered California, the insurance marketplace California created as a result of the

6   Affordable Care Act. However, this insurance is both more costly to Ms. Martinez than

7   the plan she was eligible for through Ms. Dominguez's employee spousal benefits, and

8   provides far more limited coverage.  Especially because Cherry Creek has retroactively

9   withdrawn insurance coverage from 2016, Ms. Martinez is very worried about incurring

10   more expense by going to the doctors who have been treating her for years but who are

11   no longer covered by insurance, and whom she cannot afford to pay out-of-pocket.  Her

12   cardiologist is not covered by her current insurance plan, and so Ms. Martinez is not

13   able to go to her regular cardiology appointments.  Her primary doctor who has treated

14   her for 13 years is no longer in-network and she must now pay a high out-of-network

15   co-pay for appointments.  She has had to rely on samples of medication she needs

16   because of the prohibitive out-of-pocket cost of medication that is not covered by her

17   new insurance.

18        39.     Ms. Dominguez and Ms. Martinez have also received bills from Defendant

19   UnitedHealth for medical services Ms. Martinez received in 2016 that were supposed to

20   have been covered by the health insurance she was provided through Cherry Creek, but

21   which UnitedHealth now appears to have retroactively denied.  For example, they

22   recently received a bill from UnitedHealth for $30,361.34 with a process date of July 2,

23   2017 for services provided to Ms. Martinez on July 18-19, 2016.  The bill states,

24   "According to our records, this dependent is not listed as covered under your plan,

25   therefore, no benefits are payable for this expense.  Please check with your employer's

26   benefits department or your plan's service representative on enrollment status of this

27   dependent."  *See* Attachment D to Complaint.  UnitedHealth denied these claims

28   despite Plaintiffs timely paying the premiums for Ms. Martinez's 2016 health insurance

COMPLAINT FOR DAMAGES     -7-

coverage.

40.     Defendants Cherry Creek and UnitedHealth have not refunded the health insurance plan premium payments made by Plaintiffs for Ms. Martinez's 2016 coverage.

41.     Ms. Dominguez and Ms. Martinez expect to receive additional retroactive medical bills for 2016 services to Ms. Martinez that were covered by insurance at the time they were provided, and for which Cherry Creek and UnitedHealth have illegally attempted to withdraw coverage.

42.     Since these discriminatory actions by Cherry Creek and UnitedHealth, Ms. Martinez has experienced symptoms of both physical and emotional distress including sleeplessness and sleep disruption, anxiety, fearfulness, and nervousness.

43.     Since these discriminatory actions by Cherry Creek and UnitedHealth, Ms. Dominguez has also experienced symptoms of both physical and emotional distress including sleeplessness and sleep disruption, anxiety, and waking up feeling like her heart is racing.

44.     On or around January 11, 2017, counsel for Ms. Dominguez and Ms. Martinez sent a letter to Cherry Creek requesting that Cherry Creek permit Ms. Martinez to enroll in health insurance plans as Ms. Dominguez's lawful spouse as required by federal law.   A copy of this letter was sent to each insurance company administrator through which Cherry Creek provided insurance: UnitedHealth Group (medical), Delta Dental of Colorado (dental), and Luxottica Group (vision).

45.     On or around January 13, 2017, John Carson, Cherry Creek's Vice President and Chief Legal & Compliance Officer responded in writing reiterating Cherry Creek's position that it would not provide Ms. Martinez health insurance because Ms. Dominguez's "spousal benefit request does not meet" Cherry Creek's "clear criteria for spousal benefits."  Mr. Carson also referenced religious views that employees should not marry a same-sex spouse.

46.     On or around January 27, 2017, a representative from UnitedHealth

informed Plaintiffs' counsel that it was Cherry Creek's decision not to provide spousal health insurance to Ms. Dominguez and Ms. Martinez because Cherry Creek is a "Christian-based company" and that UnitedHealth was aware of law requiring that same-sex married spouses be treated the same as opposite-sex married spouses, but stated as administrators of Cherry Creek's plans, they would write the policy and administer it following the directions of Cherry Creek.

47.     On or around February 27, 2017, Ms. Dominguez filed a complaint against Cherry Creek with the Los Angeles office of the EEOC regarding denial of spousal health benefits to her wife.  On or around May 18, 2017, the EEOC issued Ms. Dominguez a copy of her charge filed with EEOC and notice of right to sue.

48.     In or around March 2017, Ms. Dominguez's supervisor, Tom Jarboe, Cherry Creek's regional director for Southern California, informed her that Cherry Creek was transferring her from the Diamond Bar office to the Pasadena office.  When Ms. Dominguez went to the Pasadena office in or around mid-April 2017, the manager of that branch informed her that the manager was leaving Cherry Creek and that the Pasadena office of Cherry Creek would be closing.

49.     Ms. Dominguez contacted Mr. Jarboe on or around May 1, 2017 to follow up and ask what office she should go to and he informed her that he would look into the issue.  However, he did not call her back or otherwise follow up with her.

50.     In the meantime, Ms. Dominguez attempted to ascertain her assignment status from Cherry Creek's Human Resources department, but was unable to get this information.  Without being assigned to an office or branch manager, Ms. Dominguez was unable to submit files for loan processing from which she could receive commission.

51.     On June 30, 2017, Ms. Dominguez received a phone call from Mr. Jarboe advising her that her position was being terminated and requesting that she pick up termination documents.  He told her that several branches were closing and there was no branch to which she could be re-assigned.

52.     Ms. Dominguez received employment termination documents from Cherry Creek on or around July 3, 2017.

53.     Cherry Creek constructively terminated and then finally terminated Ms. Dominguez's employment shortly after she engaged in the legally protected activity of filing a complaint of discrimination with the Equal Employment Opportunities Commission.

54.     As a result of Cherry Creek's retaliatory termination of Ms. Dominguez's employment, she lost her own health insurance coverage and other compensation including future earnings.

55.     Also as a result of Cherry Creek's retaliatory termination of her employment, Ms. Dominguez has experienced further distress and anxiety.

56.     Despite informing Ms. Dominguez that there was no Cherry Creek branch to which she could be re-assigned and terminating her employment as of June 30, 2017, Cherry Creek nonetheless continues to advertise Ms. Dominguez's services for the profit of the company.  Using her name, photograph, and a purported signature, Cherry Creek's website currently lists Ms. Dominguez as a loan officer in Cherry Creek's Rancho Cucamonga, CA office—a branch where she has never been assigned—and Cherry Creek has fraudulently created a letter to potential Cherry Creek clients posted on the website with Ms. Dominguez's "signature."  *See* Attachment E to Complaint. On information and belief, Cherry Creek also continues to send marketing materials to clients using Ms. Dominguez's name.

57.     Cherry Creek's continued advertisement of Ms. Dominguez as a Cherry Creek loan officer is further evidence that Cherry Creek's termination of her employment was pretextual and retaliatory.

/ / /

/ / /

/ / /

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Violation of Title VII (Discrimination Based on Sex)

*(Plaintiffs Dominguez and Martinez against Defendant Cherry Creek)*

58.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

59.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, prohibits employers from discriminating against employees on the basis of sex.

60.     Cherry Creek refused to provide employment-based spousal health insurance benefits for the lawful spouse of its employee Judith Dominguez solely because Ms. Dominguez and her wife, Patricia Martinez, are both women.

61.     If either Ms. Dominguez or Ms. Martinez were of a different sex, or if Ms. Dominguez were married to someone of a different sex, Cherry Creek would have provided spousal health benefits to Ms. Dominguez's spouse.

62.     Cherry Creek's denial of employment-based spousal health insurance benefits to Ms. Dominguez and Ms. Martinez discriminates on the basis of sex because it treats Ms. Dominguez differently solely on the basis that she and her spouse are both women.

63.     Cherry Creek refused to provide spousal health insurance benefits to Plaintiffs because of sex-based stereotypes that a woman should only be married to a man and not to a woman.

64.     Cherry Creek violated Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiffs with respect to compensation, terms, conditions. privileges of employment because of sex.

65.     Cherry Creek's actions and omissions have caused Plaintiffs severe injury including financial damages and serious physical and emotional distress.

66.     The conduct of Cherry Creek, through its agents and employees, was malicious, fraudulent, and oppressive and/or done with the knowledge that the company

1   was acting in violation of law, and/or with a willful and conscious disregard for

2   Plaintiffs' rights and the deleterious consequences of Defendant's actions. As a result,

3   Defendant's actions justify an award of exemplary and punitive damages to punish the

4   wrongful conduct alleged herein and to deter such conduct in the future.

5                          **SECOND CLAIM FOR RELIEF**

6                          **Violation of Title VII (Retaliation)**

7                  *(Plaintiff Dominguez against Defendant Cherry Creek)*

8        67.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs

9   as though fully set forth herein.

10       68.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), prohibits

11  employers from retaliating against employees for engaging in the protected activity of

12  filing an employment discrimination complaint.

13       69.    Through its conduct, Defendant retaliated against Plaintiff Dominguez for

14  engaging in protected activity, including filing a complaint concerning employment

15  discrimination based on sex.

16       70.    The protected activity was a substantial motivating factor in the retaliatory

17  action.

18       71.    Defendant Cherry Creek was aware of Ms. Dominguez's EEOC complaint

19  against the company.  Shortly after Ms. Dominguez filed the complaint, Cherry Creek

20  transferred her out of the Diamond Bar office to another office that closed within 30-45

21  days from when she was to start there.  Cherry Creek then kept Ms. Dominguez in

22  limbo regarding her assignment, refused to respond to her inquiries resulting in her

23  inability to submit new loan files and subsequent loss of potential clients, and

24  terminated her employment without notice.

25       72.    The reason Cherry Creek gave Ms. Dominguez for her termination was

26  pretextual, given that Cherry Creek continues to promote Ms. Dominguez on its website

27  out of another local California office, despite telling her there was no branch to which

28  she could be re-assigned.

COMPLAINT FOR DAMAGES              -12-

73.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Dominguez has suffered and will continue to suffer emotional and psychological injuries, medical expenses, and loss of earnings and other employment benefits. Plaintiff Dominguez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

74.     The conduct of Cherry Creek, through its agents and employees, was malicious, fraudulent, and oppressive and/or done with the knowledge that the company was acting in violation of law, and/or with a willful and conscious disregard for Plaintiffs' rights and the deleterious consequences of Defendant's actions. As a result, Defendant's actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## THIRD CLAIM FOR RELIEF

### Violation of Equal Pay Act

*(Plaintiffs Dominguez and Martinez against Defendant Cherry Creek)*

75.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

76.     The Equal Pay Act, 29 U.S.C. § 206(d) prohibits employers from compensating employees differently on the basis of sex, including with respect to medical benefits.  29 C.F.R. § 1620.11(a) & (b).

77.     The Equal Pay Act makes it "unlawful for an employer to make available benefits for the spouses of employees of one gender where the same benefits are not made available for the spouses of families of opposite gender employees." 29 C.F.R. § 1620.11(c).

78.     By denying her spouse employer-sponsored health insurance benefits. Cherry Creek provided Judith Dominguez, a woman married to a woman, less compensation than Cherry Creek provided to men who are married to women, for equal work on jobs for which the performance of those jobs requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

COMPLAINT FOR DAMAGES                    -13-

79.     Cherry Creek violated the Equal Pay Act by refusing to provide spousal health insurance benefits to Ms. Dominguez on the same terms provided to male employees who are married to women and by refusing to provide the same certainty of spousal health insurance benefits to Ms. Martinez as it provided to men who are married to women employed by Cherry Creek.

80.     Cherry Creek differentiated in the spousal benefits it provided to Plaintiffs solely based on sex.  If Ms. Dominguez had been a man married to a woman, or if her spouse were male, she would have been able at all times to add her spouse to Cherry Creek's employee health insurance plans.

81.     Plaintiffs are entitled to all remedies available for violations of the Equal Pay Act, including monetary damages and attorneys' fees and costs of litigation.

82.     The conduct of Cherry Creek, through its agents and employees, was malicious, fraudulent, and oppressive and/or done with the knowledge that the company was acting in violation of law, and/or with a willful and conscious disregard for Plaintiffs' rights and the deleterious consequences of Defendant's actions. As a result, Defendant's actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### **FOURTH CLAIM FOR RELIEF**

**Violation of Affordable Care Act**

*(Plaintiffs Dominguez and Martinez against Defendant UnitedHealth)*

83.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

84.     Section 1557 of the Affordable Care Act prohibits covered entities from discriminating on the basis of sex in provision or administration of health insurance, 42 U.S.C. § 18116 & 45 CFR § 92.  "A covered entity shall not, in providing or administering health-related insurance or other health-related coverage deny, cancel, limit, or refuse to issue or renew a health-related insurance plan or policy or other health-related coverage, or deny or limit coverage of a claim, or impose additional cost

COMPLAINT FOR DAMAGES                    -14-

sharing or other limitations or restrictions on coverage on the basis of . . . sex." 45 CFR § 92.207(b)(1).  "A covered entity shall not, in providing or administering health-related insurance or other health-related coverage have or implement…benefit designs that discriminate on the basis of…sex in a health-related insurance plan or policy, or other health related-coverage." 45 CFR § 92.207(b)(2).

85.    Cherry Creek retained UnitedHealth as the Third-Party Administrator for its medical insurance plan.  As the Third-Party Administrator, UnitedHealth wrote and administered the medical health insurance plan for Cherry Creek's employees and their families.

86.    UnitedHealth is a covered entity under Section 1557 and may not discriminate on the basis of sex in provision or administration of health-related insurance.

87.    Cherry Creek and UnitedHealth refused to re-enroll the lawful spouse of Cherry Creek employee Judith Dominguez for 2107 employment-based spousal health insurance benefits solely because Ms. Dominguez and her wife, Patricia Martinez, are both women.

88.    Cherry Creek and UnitedHealth retroactively revoked Ms. Dominguez's health insurance coverage for 2016.  In 2017, UnitedHealth retroactively declined 2016 claims by Ms. Dominguez despite the fact that she was enrolled in their health insurance plan when she received those services.  Cherry Creek and

89.    If either Ms. Dominguez or Ms. Martinez were of a different sex, or if Ms. Dominguez were married to someone of a different sex, Cherry Creek and UnitedHealth would have provided and administered spousal health benefits to Ms. Dominguez's spouse.

90.    Cherry Creek and UnitedHealth's denial of employment-based spousal health insurance benefits to Ms. Dominguez and Ms. Martinez discriminates on the basis of sex because it treats Ms. Dominguez differently solely on the basis that she and her spouse are both women.

COMPLAINT FOR DAMAGES                    -15-

91.     The conduct of UnitedHealth, through its agents and employees, was malicious, fraudulent, and oppressive and/or done with the knowledge that the company was acting in violation of law, and/or with a willful and conscious disregard for Plaintiffs' rights and the deleterious consequences of Defendant's actions. As a result, Defendant's actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## FIFTH CLAIM FOR RELIEF

### Violation of California Fair Employment & Housing Act (Retaliation)

*(Plaintiff Dominguez against Defendant Cherry Creek)*

92.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

93.     The California Fair Employment and Housing Act, Cal. Gov. Code § 129040(h), prohibits employers from retaliating against employees for engaging in the protected activity of filing an employment discrimination complaint.

94.     Through its conduct, Defendant retaliated against Plaintiff Dominguez for engaging in protected activity, including filing a complaint concerning employment discrimination based on sex.

95.     The protected activity was a substantial motivating factor in the retaliatory action.

96.     Defendant Cherry Creek was aware of Ms. Dominguez's EEOC complaint against the company.  Shortly after Ms. Dominguez filed the complaint, Cherry Creek transferred her out of the Diamond Bar office to another office that closed the same day she was to start there.  Cherry Creek then kept Ms. Dominguez in limbo regarding her assignment, refused to respond to her inquiries, and terminated her employment without notice.

97.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Dominguez has suffered and will continue to suffer emotional and psychological injuries, medical expenses, and loss of earnings and other employment benefits.

COMPLAINT FOR DAMAGES                    -16-

Plaintiff Dominguez is thereby entitled to general and compensatory damages in amounts to be proven at trial.

98.     The conduct of Cherry Creek, through its agents and employees, was malicious, fraudulent, and oppressive and/or done with the knowledge that the company was acting in violation of law, and/or with a willful and conscious disregard for Plaintiffs' rights and the deleterious consequences of Defendant's actions. As a result, Defendant's actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## SIXTH CLAIM FOR RELIEF

### Violation of California Labor Code (Retaliation)

*(Plaintiff Dominguez against Defendant Cherry Creek)*

99.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

100.     Plaintiff Dominguez, while an employee of Cherry Creek, informed the EEOC of Cherry Creek's unlawful discrimination against Plaintiffs.

101.     California Labor Code §1102.5(b) prohibits employers from retaliating against employees for reporting information disclosing a violation of federal or state law to a government or law enforcement agency with authority to investigate such violation.

102.     Through its conduct, Defendant retaliated against Plaintiff Dominguez for engaging in protected activity, including filing a complaint with the EEOC concerning employment discrimination based on sex.

103.     Defendant Cherry Creek was aware of Ms. Dominguez's EEOC complaint against the company.  Shortly after Ms. Dominguez filed the complaint, Cherry Creek transferred her out of the Diamond Bar office to another office that closed within 30-45 days from when she was to start there.  Cherry Creek then kept Ms. Dominguez in limbo regarding her assignment, refused to respond to her inquiries resulting in her inability to submit new loan files and subsequent loss of potential clients, and

1    terminated her employment without notice.

2        104.    The reason Cherry Creek gave Ms. Dominguez for her termination was

3    pretextual, given that Cherry Creek continues to promote Ms. Dominguez on its website

4    out of another local California office, despite telling her there was no branch to which

5    she could be re-assigned.

6        105.    As a direct and proximate result of Defendant's unlawful conduct, Ms.

7    Dominguez has suffered and will continue to suffer emotional and psychological

8    injuries, medical expenses, and loss of earnings and other employment benefits.

9    Plaintiff Dominguez is thereby entitled to general and compensatory damages in

10   amounts to be proven at trial.

11       106.    The conduct of Cherry Creek, through its agents and employees, was

12   malicious, fraudulent, and oppressive and/or done with the knowledge that the company

13   was acting in violation of law, and/or with a willful and conscious disregard for

14   Plaintiffs' rights and the deleterious consequences of Defendant's actions. As a result,

15   Defendant's actions justify an award of exemplary and punitive damages to punish the

16   wrongful conduct alleged herein and to deter such conduct in the future.

17                        **SEVENTH CLAIM FOR RELIEF**

18            **Wrongful Termination in Violation of Public Policy**

19            *(Plaintiff Dominguez against Defendant Cherry Creek)*

20       107.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs

21   as though fully set forth herein.

22       108.    Cherry Creek terminated Plaintiff Dominguez in response to her complaint

23   of discrimination and unlawful conduct by Cherry Creek.  This conduct violates the

24   public policies of this State as expressed in, *inter alia*, the Labor Code, the Civil Code,

25   the Government Code, and all state statutes and regulations prohibiting retaliation.

26       109.    As the direct and legal result of Defendant's wrongful termination in

27   violation of public policy, Ms. Dominguez has suffered and will continue to suffer

28   reasonable, foreseeable, and ascertainable damages, including but not limited to

COMPLAINT FOR DAMAGES                -18-

emotional and psychological distress, past and future earning loss, loss of benefits, and attorneys' fees.

110.    The conduct of Cherry Creek, through its agents and employees, was malicious, fraudulent, and oppressive and/or done with the knowledge that the company was acting in violation of law, and/or with a willful and conscious disregard for Plaintiffs' rights and the deleterious consequences of Defendant's actions. As a result, Defendant's actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## EIGHTH CLAIM FOR RELIEF

**Unauthorized Use of Name or Likeness for Commercial Purposes**

*(Plaintiff Dominguez against Defendant Cherry Creek)*

111.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

112.    After wrongfully terminating Plaintiff Dominguez, Defendant Cherry Creek has knowingly used her name, signature, photograph and/or likeness for the purposes of advertising or selling their services, without the prior consent of Plaintiff.

113.    The conduct of Cherry Creek, through its agents and employees, was malicious, fraudulent, and oppressive and/or done with the knowledge that the company was acting in violation of law, and/or with a willful and conscious disregard for Plaintiffs' rights and the deleterious consequences of Defendant's actions.

114.    Pursuant to California Civil Code § 3344, Plaintiff is entitled to profits from such unauthorized use, damages suffered by her as a result of such unauthorized use, punitive damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.    For compensatory, general and special damages against Defendants, in an amount to be proven at trial;

2.    For damages and expenses related to the denial of health insurance

COMPLAINT FOR DAMAGES                    -19-

coverage for Plaintiff Patricia Martinez;

3. For damages and expenses related to the wrongful termination of Plaintiff Judith Dominguez;

4. General damages, including damages for physical and emotional pain, emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness and trauma and suffering;

5. All civil penalties available under Plaintiffs' claims for relief;

6. Prejudgment and post-judgment interest;

7. For punitive and exemplary damages against Defendants in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

8. For costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and as otherwise authorized by statute or law;

9. For restitution as the Court deems just and proper;

10. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury in this action.

Dated: August 17, 2017   Respectfully Submitted,

HADSELL STORMER & RENICK LLP

By: ___/s/ Lori Rifkin_____
Dan Stormer
Lori Rifkin
Attorneys for Plaintiffs